Case number 13-7043. Anthony S. Harris, Appellant v. District of Columbia Water and Sewer Authority. Mr. Davis for the appellant. Ms. Fates for the appellee. Good morning, Your Honors. We're here because the district court granted WSSDA's motion to dismiss under Federal Civil Procedure 12b-6 with respect to Mr. Harris' claims under Title VII and 42 U.S.C. Section 1981. And the court did so by ruling that Mr. Harris could not establish a causal connection between his allegations and the defendant's conduct. The district court found that there was no temporal proximity between Mr. Harris' protected EEO activity and WSSDA's termination of his employment, and therefore Mr. Harris' employment discrimination claims failed to state a claim for which relief could be granted. It's undisputed that this court and the United States Supreme Court have consistently rejected any efforts to apply an evidentiary standard to the pleading requirements of Rule 8a of the Federal Rules of Civil Procedure. This has consistently been reflected by this court's decisions and by the United States Supreme Court. The case that we cited, Swierkiewicz v. Serena, 534 U.S. 506, is the case that we think is most on point in that regard. In that case, the Supreme Court stated very clearly that it has never indicated that the pleading requirements of a complaint ought to be construed in light of the proof requirements or the evidentiary standards relevant to a Title VII case. In that respect, the district court erred, and this court has in its cases, we cite Roshon v. Gonzalez, Coens v. Shalala, and if I can get this right, Actizo-Kabet v. Fain-Jeans. These are the cases which are most important, which say that specific facts are not necessary, and a complaint need only give the defendant fair notice of the claim. In Roshon v. Gonzalez, this court said, and that case is at 438 Fed 3rd, that all that is needed is for the complaint to state that the complainant engaged in protected activity and the defendant took an adverse action against them on the basis of that activity. Here, it's very, very clear that Mr. Harris's complaint states all the elements necessary to survive the motion to dismiss. He stated that he had, in fact, engaged in protected activity. He specified that protected activity, and he also stated very, very clearly that as a result of that protected activity, he had, in fact, been terminated from his employment. That the defendant abolished his job as a result of that protected activity resulting in him being terminated. He was not given an opportunity, as the rules require, to compete for any other position. And based on his information and belief, as stated in the complaint, that in fact, although they abolished his position by title, they did not abolish the functions of his position. And he stated very clearly that in point of fact, they could not abolish the functions of his position because they were so central to the functioning of the defendant's operation. So the case you rely on, as you started out saying most closely, is Sierkiewicz. And what's your sense of the extent to which the subsequent, Supreme Court's subsequent decisions in Iqbal and Twombly affects the analysis that the Court would undertake if it only had Sierkiewicz and didn't have Iqbal? I don't think they affect it at all. As a matter of fact, in Twombly, they specifically state that in point of fact, they don't see how that ruling affects Sierkiewicz, their ruling in Sierkiewicz at all. They state that very, very clearly. And in that case, the Twombly case, really, they decided on the basis that the plaintiffs were alleging an antitrust action. They were alleging that there was a collective action by the defendants in restraining the trade, but they never alleged that there was any kind of agreement. So you think the Second and Sixth Circuit's decisions are wrong? They read those cases as saying that, yeah, you don't have to plead the elements of a pre-enfranchisement case, but the plausibility requirement of Twombly and Iqbal now do apply. You don't think that's right? Well, I think that if you apply the plausibility standard, the plausibility requirement doesn't require that the plaintiff be able to prevail. It only requires that the plaintiff give notice of the claim and that there be some basis upon which the plaintiff can claim relief. So this circuit is clearly in opposition to the Sixth Circuit, and of course I'm going to say this circuit is correct because that supports our position. Well, let me ask you the question this way. In Sierkiewicz, the court said that an allegation that the plaintiff was terminated on the basis of national origin was enough. Do you think that's really any longer enough under Iqbal and Twombly? I do. I do. But you don't have to prevail on that to win your case, do you? Assume you're wrong about that. Assume that you actually do have to plead sufficient plausible facts to make that a case. Do you think you've done that here? Well, absolutely, Your Honor. If I may, Mr. Harris pled very, very clearly that he had written letters to the mayor and to the city council accusing his employer of discrimination. And on the basis of that, he says that he was effectively terminated. I mean, and Your Honors, in the Rashan v. Gonzalez case, say very, very clearly that that's all that is required, that the plaintiff state that he engaged in protected activity and that as a result of that protected activity, in fact, he was subjected to an adverse action. What do you say? At the end of Iqbal, the court says, answers an argument the respondent makes. The court says it follows, respondent says that his complaint is sufficiently well pleaded because it claims that petitioners discriminated against him on account of his religion, race, or national origin for no legitimate, penological reason. And then the court says, were we required to accept this allegation as true, respondent's complaint would survive. But the federal rules do not require courts to credit a complainant's conclusory statements without reference to its factual context. Isn't that suggest that that part of Swerkiewicz, which says it's enough just to say you discriminated against me on account of race, is not, doesn't make it through Iqbal? Well, I think if it were true that the plaintiff in this case had only made conclusory statements, I'd be in a better position to respond to that question. But I don't think that applies here because of the fact that those are not conclusory statements. What he's saying is, is that he has information to show that the reason given for his termination, that is to say that his job was abolished, is not true. So you're not relying only on the statement that I was retaliated against in response to my objection. Instead, you're relying on the factual statements that you plead in your complaint. Well, actually, Your Honor, I'm relying on both because I think that both of those requirements are satisfied. One, that he's providing information, and certainly, as the Supreme Court said in Swerkiewicz, he should be given an opportunity to provide evidence in support of his claim. And that that is different than requiring him to plead a prima facie case. That what was wrong in Swerkiewicz was that he was required to plead a prima facie case. What do you think is, how would you word or verbalize the difference between a prima facie case and a plausible case? Plausible being the language they use in Iqbal. Because a plausible case relates to what you have pled. A prima facie case relates to evidence that you produced in support of that pleading. And therein lies the difference, because on the one hand, when you talk about a prima facie case, you're talking about producing evidence. Plaintiffs can't just produce evidence. Defendants in almost all employment cases have all of the evidence. But do you have to plead facts sufficient for a, what's the difference between pleading facts sufficient for a prima facie case and pleading facts sufficient for a plausible case? I'm still trying to figure that out, Your Honor. If the truth be known, and no matter how I read the decisions, I don't know that the courts have really figured it out, but I know that the courts talk about facts. But in reality, if we're talking about pleading a fact, and at the 12B6 stage, everything that's well pleaded has to be accepted as true. But then that requires that plaintiffs put all kinds of things in their complaints that they may or may not have evidence of. And the real folly in that kind of argument is, suppose that during discovery, I mean, and the whole idea of pleading causation in terms of temporal proximity versus, let's say, direct evidence, suppose that in discovery, you find out that there is direct evidence. I mean, the defendant may offer one reason, and this case is a perfect example. The plaintiff engaged in protected activity in January and February of 2011. He was subsequently, his position was abolished in October of 2011. Now, we have no idea when that decision was made to terminate his employment, to abolish his position. It could have been made in February, as soon as the defendants got notice. For all we know in discovery, there may be, for instance, some memorandum hidden in the file somewhere where someone says, well, listen, we can't terminate this guy immediately because it will implicate us, it will give him ammunition to file a complaint. Let's wait a few months until we can figure out a reason to get rid of him, which is essentially what happened. Are there further questions from the panel? No. Thank you. Thank you, Your Honor. May it please the Court, good morning. The District Court properly dismissed a complaint here pursuant to Rule 12b-6. In the complaint that was alleged here, the plaintiff alleged every element of a retaliation claim. And the District Court so found that on page five, I believe, of the District Court's opinion. There were two protected activities. That was in January 2011 when the letter was sent to Mayor Gray. There was another letter in February 2011 that was sent to the D.C. City Council. So the protected activity was alleged. The adverse activity, or the adverse action, I should say, we know was in October 13 when he was terminated as a result of the job being eliminated. There's one other fact. Let me just go to the core of the issue as I see it. Let's assume you're right, and I think you're probably right, that the complaint is to be measured against Twombly and Iqbal. So the plaintiff does need to have alleged facts that could plausibly lead to a conclusion of discrimination, right? You agree that that's the standard? Yes. Okay, so tell me why this complaint doesn't meet that standard. It doesn't meet that standard because in addition to the protected activity and the termination, and saying I was terminated because of that protected activity, the facts attempt to establish causation by knowledge. But he doesn't plead that's the only way he's attempting to establish liability. He's not saying, you know, I was discriminated against, I wrote this letter and three months later I was fired and that's my case. That's not what he says. He says that he wrote a letter complaining he was subsequently terminated because of an illness. The illness was developing at the same time as he was writing his complaint, and at this point we just don't know, do we, why he was terminated. It could have been under your theories simply because he wrote the letter. It might have been that the illness was the last straw, or there might be some other reason. We just don't know. But why isn't, why don't the allegations of this complaint satisfy the plausibility standard? That's, I just don't see, he hasn't limited himself to claiming the temporal connection is the reason why he can win. Your Honor, we believe that he has done that by the allegations in his complaint. Where is he said that? Can you show me that in the complaint? What I rely on, Your Honor, is the fact that he alleges, which he says in May 11, D.C. Water contacted me to talk about the letter that I had sent to the D.C., to the mayor of the District of Columbia. By citing that fact, and no other fact except a subjective belief that he was a good performer. A belief that some of the functions remain. What's wrong with that? Because it seems to me that under Iqbal and Twombly, it may be true, let's just assume that it's true, that you can't just articulate a complaint that alleges I was terminated and the reason I was terminated was because of retaliation. Let's suppose that you have to do something more than that conclusory allegation to show that there's something to the notion that the reason you were terminated is because of retaliation. But then what he says is, the de facto allegations, I got all kinds of awards because I was really good. And then he goes on to say, and then nobody gave me an opportunity to apply for other positions. And then he goes on to say, and then the stuff that I was doing was continued, somebody else was continuing to do it. And it seems to me each of those three things tend to bolster the notion that the reason he was terminated was because of retaliation. It may well be that the evidence doesn't bear that out. And it may well be that through the process of discovery, or maybe even without discovery, that evidence is going to come forward that shows that it wasn't retaliation. But the things that he alleges are beyond just saying, I was fired and it was because of retaliation. He goes on to say, and there's these other things that bear out, that it might have been retaliation. Now, I don't have to do more than that at the complaint stage, but I've done enough under Iqbal because I've gone past just the conclusory allegation that it was retaliation. Here's three things that tend to bolster the notion that it was retaliation. And at this point, it's up to the evidence to figure out whether I'm right. Your Honor, if those are the facts that he had alleged and had not alleged two other facts, I would say that that would be sufficient. What I'm saying here is that for lack of a better way of describing it, he pled himself out of a complaint. What are the facts you think pled out? I think the fact, again, that he relies on the knowledge of the D.C. government in May 11 because they reached out to him. Well, how does that plead you out? I don't understand. Even if there was a year between the knowledge and the act, have we ever held that that time difference is by itself enough to eliminate an argument about retaliation if that was the case? We certainly have never held that there is other evidence of retaliation. We certainly never, we've never said that a five-month difference is enough to plead you out. We may, I understand your argument that it's not enough to plead you in, but we've never held that it's enough to plead you out if you have evidence of, you know, the kind of things that Judge Srinivasan are talking about fit within very clear doctrinal categories. We said in the Acca case on Boncourt that if you have evidence of pretext, that's enough to get to a jury. Here, he is pleading evidence of pretext. They told me they abolished the position, but in fact they kept the work. That is pretext. That under Acca would be enough to get to a jury, not just to get past 12B6. In the George case, George v. Levitt, we said in the context of a discharge claim, the following method of establishing a prima facie case is enough. Requires a showing that the discharge was not attributable to the two common legitimate reasons for discharge. Performance below the employer's legitimate expectations. And as Judge Srinivasan just said, he is pleading that he has facts to show that he did not perform below. His facts, namely, that he received commendations. And second, elimination of the plaintiff's position altogether. Here, he's pleading that they eliminated in name, but not in work. So why isn't this a rather straightforward, easy case of a plausible claim? Because he's pled a bunch of facts that probably, if were true, would not just make it plausible, but would get you to the jury. But there is one other fact. The other fact that I was going to go to, Your Honor, was the whole issue of when he called D.C. Water to say that he was going to be out on leave and he could not return until, I think it was the end of October. And a few days after that call, he is let go. There is a but-for standard when we're talking about a retaliation claim, in terms of the but-for, the protection of the claim. So what's the reason you think he was actually let go? You're proposing? What was that reason? Why was he actually let go? You're saying there's some other thing. What's the but-for here? All I'm saying is that the call to D.C. Water about the FMLA leave was an intervening act, which is what the district court found. In terms of breaking any causation... What's the intervening act? I'm sorry, I'm not following. What's the intervening act? The intervening act was his calling D.C. Water to say, I'm going to be out on FMLA leave until... But he wasn't... So you would be able to... This is classic McDowell Douglas. You would be able, once the case gets started, to come forward and say the real reason we let him go was he was going to be on leave for a long time. But so far we don't have that explanation. At this point, the only explanation... Mr. Harris has already actually pled what he thinks is your explanation. That is, you notified him that his position was abolished. You didn't notify him that we can't wait until you come back. You didn't notify him that we're going to actually discriminate against you as a violation of the Family Leave Act, which might be acceptable. It might be bad for a different reason, but it might get you over the retaliation claim. The only reason we now have on the pleadings is that the position was abolished. So the possibility that you raise is a possibility, but we don't have that yet. Is that right? I mean, there's nowhere in here that says he was told that the reason he was being let go was he couldn't come back. That's correct, Your Honor. Instead, the only reason he's alleging that you told him was the position was abolished. Now, maybe that's false. That's something that would be established in discovery. Why isn't that enough for complaint? Because, Your Honor, we agree with the District Court that because he was relying on temporal proximity... But he wasn't. But that's my question. I think that's all three of our questions now. We have temporal proximity. We have a rationale given to him, which he has at least made a plausible case as pretext. And we have the fact that another possible reason for getting rid of him, which would be bad work, he's alleged, he has objective evidence, isn't true. And he didn't get an opportunity to apply for another position. That sounds like a lot more than just temporal proximity. Your Honor, I would agree with that. It sounds like pretext. But it's our position that because he laid out in his complaint all of the elements for a retaliation claim, and as a matter of law, those were not sufficient. Why? Why aren't those sufficient? Because the court interpreted, and we interpreted him as relying to establish all of the elements of the complaint. In establishing causation, he was relying on the knowledge of PC1. Well, it's irrelevant what the District Court interpreted of the complaint, right? Because we have not... There's anything wrong with the District Court. But we have to do this de novo. So we have paragraphs 10, which refers to the quality of his work. We have 26, which says he was told the position was abolished. We have paragraph 27, he wasn't given any opportunity to apply for other positions. And we have paragraph 28 saying, although it was officially abolished, the functions continue. That seems like more than just an allegation about temporal proximity. I agree with that, Your Honor. It sounds like pretext. So then why isn't... I'm not following why that's enough. Just because the District Court thought that he wasn't relying on pretext, that doesn't mean that he wasn't. If you agree that sounds like pretext, why isn't that enough? Because I don't think you get to pretext yet. I don't think you get to pretext in this case. Because the elements of retaliation, all of those elements, we believe, were alleged in the complaint. And as a matter of law, because of the closeness of the temporal proximity, it's not able to have a plausible claim. I don't think you get to pretext yet. When do you think we get to pretext? Your theory is you don't here, because your theory is that the complaint, as you said, pleaded him out of court. That's your theory. But if you're wrong about that, then we get to pretext at summary judgment. I would agree with that. So your whole case turns on your argument that he's essentially limited his case to the temporal connection, right, for causation. That's your argument. Yes, Your Honor. And if you're wrong about that, then you agree that this case should not have been dismissed at this point. If I'm wrong about that, yes, Your Honor, you would get to pretext. Right. Okay, great. Thank you. Further questions? No. Okay, thank you. Mr. Davis, I have one question for you. Yes, Your Honor. Do you limit your case to temporal proximity? No, Your Honor, absolutely not. And why do you say that? Because of the fact that we plead the elements of retaliation in terms of the establishment that the plaintiff engaged in protected activity, that he was subjected to an adverse action, and that there was a causal connection between the protected activity and the adverse action. The causal connection has, I mean, it is true, and this Court has said it a million times, and the Supreme Court has said it numerous times, that in point of fact, temporal proximity is one way of showing a causal connection. But the nexus doesn't have to be based on temporal proximity. It can be the fact that although they give one reason for the action, that in point of fact, that was not true. It was pretext. Common sense and common logic says you don't fire one of your most valuable employees. But if you're going to terminate that employee, if you're going to say that the reason you have to let him go is because you're abolishing his position, and then it turns out that in point of fact, his position hasn't been abolished, and the discovery discloses that there are people still performing that work, that that work is absolutely crucial to the work of the organization, that is pretext. But pretext only comes in at the evidentiary stage, and we're not talking about evidence. We're just talking about pleading a claim and giving the defendant fair notice of what this case is about, of why the plaintiff is taking him to court. And that's all we've asked. And on that basis, we think that the district court clearly erred, because it bought that temporal proximity argument. And if you go back and look at the pleadings, the original motion to dismiss was couched on the basis that the plaintiff had not pleaded a time of facial case of discrimination. We came back in our opposition and said, we're not talking about discrimination in terms of that. We're talking about it is a discriminatory act under 704 to discriminate against a person because they have opposed a practice which is made illegal under Title VII. That is what we said. They came back and said, hey, but there's no temporal proximity. And for whatever reason, the district court bought that. But our issue was, and a claim reading a complaint shows, that we're not relying solely upon temporal proximity. We don't even know when the decision to abolish this position was made. And we won't know until discovery, until, we won't know until discovery exactly what machinations the defendant employer went through. In order to, in fact, abolish the position and create the straw man. Okay. No further questions from the bench? No. All right. Thank you both. Thank you, Your Honor. We'll take another submission.
judges: Garland, Tatel, Srinivasan